In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 18-2454

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RICHARD KRAEMER,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:17-cr-00035-PP-1 — **Pamela Pepper**, *Judge.*

———————————

ARGUED MARCH 28, 2019 — DECIDED JULY 31, 2019

———————————

Before RIPPLE, MANION, and SYKES, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Richard Kraemer pleaded guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). At sentencing, the district court determined that Mr. Kraemer's prior Wisconsin convictions for first-degree and second-degree sexual assault of a child constituted convictions "relating to … abusive sexual conduct involving a minor" and therefore triggered a ten-year, mandatory minimum sentence. 18 U.S.C. § 2252(b)(2). The dis-

trict court then imposed a sentence of 133 months' imprisonment, followed by eight years of supervised release.[1]

Mr. Kraemer now challenges the district court's determination that he was subject to the mandatory minimum. As we explain more fully in the following paragraphs, because the applicable federal enhancement statute, 18 U.S.C. § 2252(b)(2), requires only that a prior state statute of conviction "relat[e] to," rather than be fully equivalent to, "aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward," the district court did not err in finding Mr. Kraemer was subject to the mandatory minimum.[2]

# I

# BACKGROUND

In 2017, law enforcement officers discovered a series of downloads of child pornography from an IP (internet protocol) address associated with Mr. Kraemer's residence. FBI agents then executed a search warrant for that residence and found an external hard drive containing images of child pornography. Mr. Kraemer later admitted that he possessed child pornography on his desktop computer and on his external hard drive, that he searched for child pornography using specific search terms, and that his current collection of child pornography totaled about 100,000 files.

A federal grand jury returned an indictment. It charged Mr. Kraemer with five counts of distribution of child por-

---

[1] The district court had jurisdiction under 18 U.S.C. § 3231.

[2] We have jurisdiction under 28 U.S.C. § 1291.

nography, in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). He entered a conditional guilty plea to one count of possession of child pornography, and the Government agreed to dismiss the five remaining counts. Mr. Kraemer reserved his right to appeal the sentencing judge's determination that his prior convictions for sexual assault of a child under Wisconsin law subjected him to a mandatory minimum sentence under the penalty-enhancement provision of the federal statute, 18 U.S.C. § 2252(b)(2). That provision provides that if a person convicted of possession of child pornography "has a prior conviction … under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, … such person shall be … imprisoned for not less than 10 years nor more than 20 years." 18 U.S.C. § 2252(b)(2).

This enhancement provision came into play because, in 1995, a Wisconsin court had convicted Mr. Kraemer of one count of first-degree sexual assault of a child and one count of second-degree sexual assault of a child. Wisconsin defined first-degree sexual assault of a child as "sexual contact or sexual intercourse with a person who has not attained the age of 13 years." Wis. Stat. § 948.02(1) (1995). Wisconsin defined second-degree sexual assault of a child as "sexual contact or sexual intercourse with a person who has not attained the age of 16 years." Wis. Stat. § 948.02(2) (1995). These convictions stemmed from an incident that occurred during Mr. Kraemer's incarceration for an unrelated conviction. His then twelve-year-old sister had visited him at the Oshkosh Correctional Institution. During her visit, on two occasions,

Mr. Kraemer intentionally had touched her breasts, over her clothes.

The presentence report prepared by the probation office advised the court that Mr. Kraemer's Wisconsin convictions qualified as predicates for the mandatory minimum under 18 U.S.C. § 2252(b)(2). Mr. Kraemer objected to that recommendation. At sentencing, the district court nevertheless agreed with the presentence report that Mr. Kraemer was subject to the mandatory minimum. Relying on our decision in *United States v. Osborne*, 551 F.3d 718 (7th Cir. 2009), the district court concluded that "sexual behavior is abusive … only if it is similar to one of the crimes denominated as a form of abuse elsewhere in Title 18," specifically, the offenses listed in Chapter 109A.[3] The court further understood our precedent to require that a district court must employ a categorical approach to evaluate whether a prior conviction is a predicate for the mandatory minimum. Accordingly, the district court proceeded to compare Mr. Kraemer's Wisconsin conviction for first-degree sexual assault of a child to the four offenses enumerated in Chapter 109A: 18 U.S.C. §§ 2241, 2242, 2243, and 2244.

First, the court determined that there was no match between Wisconsin Statutes § 948.02(1) and 18 U.S.C. § 2241(c); the state statute "prohibit[ed] sexual contact or intercourse with a person who is not yet 13 while the federal statute prohibit[ed] a sex act with a person who has not yet reached

---

[3] R.48 at 14.

the age of 12."[4] The state statute therefore was broader than the federal offense.

Second, the court determined that there was no match between Wisconsin Statutes § 948.02(1) and 18 U.S.C. § 2243(a). The federal statute required that the perpetrator be at least four years older than a victim who has attained the age of twelve but not the age of sixteen. Because the state statute required no difference in age between the perpetrator and his victim, the federal prohibition was narrower than the state offense.

Third, the court determined that there was no match between Wisconsin Statutes § 948.02(1) and 18 U.S.C. § 2244(c), which prohibits sexual contact with a person under the age of twelve, because the state statute reached more victims than the federal offense.[5]

Finally, the district court turned to 18 U.S.C. § 2242(2), which prohibits knowingly "engag[ing] in a sexual act with another person if that other person is … incapable of appraising the nature of the conduct." The court observed that this provision "is a very broad statute," which "covers anybody regardless of age who is incapable of appraising the

---

[4] *Id.* at 16.

[5] At sentencing, the district court referenced 18 U.S.C. § 2244(c). *See id.* at 17. However, context makes clear that the court meant to reference 18 U.S.C. § 2244(a). Section 2244(a) prohibits knowingly engaging in or causing sexual contact with or by another person. By contrast, § 2244(c) sets forth a penalty enhancement for certain violations of § 2244(a) that involve victims who have not attained the age of 12 years.

nature of the sexual conduct or the sexual act."[6] According to the court, its coverage "includes, presumably, one who is too young to comprehend the nature of the act in which they're engaged."[7] Therefore, the court concluded, there was a categorical match between this provision and the Wisconsin conviction for first-degree sexual assault of a child. The court also found a categorical match between the same provision and Mr. Kraemer's conviction for second-degree sexual assault of a child under Wisconsin Statutes § 948.02(2). It reasoned that the federal offense "is far broader than that statute of conviction because [§] 2242(2) covers full categories of people [], including underage people[,] who are not capable [of] ever comprehending or can't comprehend the nature of their behavior."[8]

The district court then calculated a guidelines range of 97 to 121 months' imprisonment, noting that the ten-year mandatory minimum subjected Mr. Kraemer to a sentence of at least 120 months. The Government and counsel for Mr. Kraemer jointly recommended a sentence of 120 months. The court imposed, however, an above-guidelines sentence of 133 months' imprisonment, followed by an eight-year term of supervised release. After the court entered judgment, Mr. Kraemer timely appealed his sentence.

---

[6] R.48 at 17.

[7] *Id.*

[8] *Id.* at 18.

## II

## DISCUSSION

Mr. Kraemer contends that the district court erred in determining that his Wisconsin convictions for sexual assault of a child triggered the ten-year mandatory minimum prescribed by 18 U.S.C. § 2252(b)(2). While agreeing that the court correctly found his state convictions did not match categorically 18 U.S.C. §§ 2241(c), 2243(a), or 2244(a), he maintains that the court erred in finding a categorical match between his Wisconsin convictions and 18 U.S.C. § 2242(2). In his view, the state statutes sweep more broadly than the federal offense. Specifically, he notes, Wisconsin does not require the State to prove the victim was incapable of understanding the nature of the sexual conduct or that the defendant was aware of his victim's incapacity.

## A.

We review de novo the question of law whether a state conviction qualifies as a predicate for the mandatory minimum under § 2252(b)(2).[9] We begin our analysis with the text of the applicable sentencing enhancement scheme. A possession of child pornography conviction makes a defendant subject to a mandatory minimum sentence of ten years' imprisonment if he "has a prior conviction under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10," "or under the laws of any State *relat-*

---

[9] *See, e.g.*, *United States v. Lockett*, 782 F.3d 349, 352 (7th Cir. 2015) ("Whether a prior conviction is a qualifying predicate under the ACCA [Armed Career Criminal Act] is a question of law, subject to de novo review.").

*ing to* aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward." 18 U.S.C. § 2252(b)(2) (emphasis added).

In determining whether a defendant's previous state conviction triggers a federal enhancement statute, we usually employ the "categorical" approach of *Taylor v. United States*, 495 U.S. 575 (1990).[10] Under this approach, we compare the elements of the defendant's prior conviction with the elements of the applicable federal offense. *Taylor*, 495 U.S. at 599. If the state statute of conviction has the same elements as the applicable federal offense, the prior conviction can serve as a predicate. *Id.* Similarly, if the state statute defines the offense more narrowly than the comparable federal statute, the prior conviction qualifies as a predicate "because the conviction necessarily implies that the defendant has been found guilty of all the elements" of the federal offense. *Id.* By contrast, if the state statute sweeps more broadly than the federal offense, then the prior conviction cannot serve as a predicate for the mandatory minimum. *Descamps v. United States*, 570 U.S. 254, 261 (2013).

Here, however, we face a different situation. As we recognized in *United States v. Osborne*, 551 F.3d 718, 721 (7th Cir. 2009), Congress has provided us in 18 U.S.C. § 2252(b)(2) a specific statutory direction on how to determine whether a state conviction qualifies as a predicate offense for this particular federal enhancement statute: The state statute of conviction must *relate to* "aggravated sexual abuse, sexual

---

[10] *See, e.g., United States v. Geasland*, 694 F. App'x 422, 434 (7th Cir. 2017) (unpublished).

abuse, or abusive sexual conduct involving a minor or ward."

Our next task is to interpret this statutory command. The Supreme Court has long instructed that we should read the words "relating to" "expansively." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018). The Justices have explained that "[t]he ordinary meaning of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)). Thus, "Congress characteristically employs the phrase to reach any subject that has 'a connection with, or reference to,' the topics the statute enumerates." *Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1197 (2017) (quoting *Morales*, 504 U.S. at 384). Our sister circuits likewise have understood the words "relating to" to have a broadening effect on the scope of the penalty enhancement. *See, e.g., United States v. Bennett*, 823 F.3d 1316, 1322 (10th Cir. 2016); *United States v. Sullivan*, 797 F.3d 623, 638 (9th Cir. 2015); *United States v. Barker*, 723 F.3d 315, 322–23 (2d Cir. 2013) (per curiam); *United States v. Colson*, 683 F.3d 507, 511–12 (4th Cir. 2012); *United States v. Hubbard*, 480 F.3d 341, 347 (5th Cir. 2007).

Understanding the congressional command of "relating to" does not, however, solve all our difficulties in interpreting § 2252(b)(2). Chapter 110 contains no definition of the terms "aggravated sexual abuse," "sexual abuse," or "abusive sexual conduct." Nor has the Supreme Court provided definitive direction as to their meaning. *See Lockhart v. United States*, 136 S. Ct. 958, 965 (2016) (declining to take a position

on the meaning of these terms). In addressing this defini-
tional problem, our earlier case, *Osborne,* 551 F.3d at 720–21,
like the Supreme Court in *Lockhart*, found helpful guidance
in the similarity between the text of 18 U.S.C. § 2252(b)(2)
and the titles and structure of the federal criminal abuse
statutes set out in Chapter 109A of the federal criminal code.
*See Lockhart*, 136 S. Ct. at 964 & nn.1–2.[11] Nevertheless, alt-

---

[11] Mr. Kraemer submits that in *Lockhart v. United States*, 136 S. Ct. 958
(2016), the Supreme Court indicated that Congress intended the terms
"aggravated sexual abuse," "sexual abuse," and "abusive sexual conduct
involving a minor or ward" in 18 U.S.C. § 2252(b)(2) to correspond to the
federal offenses defined in Chapter 109A. In *Lockhart*, the Court deter-
mined only that "the phrase 'involving a minor or ward' modifies only
the phrase that it immediately follows: 'abusive sexual conduct,'" *id.* at
963, so that the penalty enhancement "applies to prior state convictions
for 'sexual abuse' and 'aggravated sexual abuse,' whether or not the
convictions involved a minor or ward," *id.* at 968. The Court observed
that Chapter 109A locates the federal sexual abuse offenses "under head-
ings that use language nearly identical to the language § 2252(b)(2) uses
to enumerate the three categories of state sexual-abuse predicates." *Id.* at
964. Though it could not "state with certainty that Congress used Chap-
ter 109A as a template for the list of state predicates set out in
§ 2252(b)(2)," the Court could not "ignore the parallel." *Id.* Thus, the
Court reasoned, "[i]f Congress had intended to limit each of the state
predicates to conduct 'involving a minor or ward,'" it is doubtful Con-
gress "would have followed … so closely the structure and language of
Chapter 109A." *Id.* The Court expressly took "no position," however, "on
the meaning of the terms 'aggravated sexual abuse,' 'sexual abuse,' and
'abusive sexual conduct.'" *Id.* at 965. Further, the Court clarified that its
"construction of § 2252(b)(2)'s sexual-abuse predicates [did] not rely on a
general assumption that Congress sought full parity between all of the
federal and state predicates in § 2252(b)(2)." *Id.* at 966. Rather, based on
"contextual cues," the Court determined that because "Congress used
language similar to that in Chapter 109A" to list the state sexual-abuse
predicates in § 2252(b)(2), the language in both instances "describes con-
                                                              (continued … )

hough the descriptions of sexual abuse set out in Chapter 109A provide a good definitional starting point in giving substance to state provisions, the explicit command of Congress in the "relating to" language makes clear that absolute congruence of state and federal offenses is not required.

The consistent drafting methodology of Congress is also helpful. When Congress wants to reference only state law congruent with federal law, it has said so clearly and specifically.[12] Therefore, if Congress had intended for § 2252(b)(2) to apply *only* when a state conviction relates to "aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward" as defined in Chapter 109A of the

---

( … continued)

duct involving both adults and children." *Id.* at 966–67. Consistent with other courts of appeals to have considered this question, *see, e.g.*, *United States v. Bennett*, 823 F.3d 1316, 1324 n.11 (10th Cir. 2016); *United States v. Krebs*, 830 F.3d 800, 802 (8th Cir. 2016); *cf. United States v. Miller*, 819 F.3d 1314, 1317 (11th Cir. 2016) (per curiam) (interpreting parallel provision in 18 U.S.C. § 2251(e)), we conclude *Lockhart* does not require full congruence between a prior state conviction and a Chapter 109A offense to implicate § 2252(b)(2).

[12] *See, e.g.*, 18 U.S.C. § 3559(e)(2)(B) (defining a "State sex offense" as an "offense under State law" "consist[ing] of conduct that would be a Federal sex offense"); 18 U.S.C. § 2426(b)(1) (defining a "prior sex offense conviction" under state law as "an offense consisting of conduct that would have been an offense" under chapter 117, chapter 109A, chapter 110, or 18 U.S.C. § 1591); 18 U.S.C. § 2241(c) (imposing a mandatory sentence of life imprisonment on a defendant previously convicted of "a State offense that would have been an offense under either" 18 U.S.C. §§ 2241(a) or (b) "had the offense occurred in a Federal prison").

federal code, it could have, *and would have*, said so.[13] We therefore cannot accept Mr. Kraemer's argument that Congress must have intended to import into § 2252(b)(2) the *specific* provisions of Chapter 109A. If it had wanted to require that only state offenses that were congruent with the offenses in Chapter 109A would trigger the mandatory minimum requirement, it would have said so explicitly.[14] Here, Congress did not say so; indeed, by employing the term "relating to," it gave a contrary direction.

Notably, our sister circuits have not interpreted § 2252(b)(2) to require complete congruence between a defendant's state conviction and one of the Chapter 109A offenses for the mandatory minimum to apply. *See, e.g.*, *United States v. Krebs*, 830 F.3d 800, 802 (8th Cir. 2016); *United States v. Mateen*, 806 F.3d 857, 861 (6th Cir. 2015); *Sullivan*, 797 F.3d at 640; *Barker*, 723 F.3d at 322–23; *Hubbard*, 480 F.3d at 348. As we already have said, we are in full agreement with that approach. True, our colleagues in the other circuits have not looked to the specific provisions of Chapter 109A for assistance in fashioning a generic definition of a state offense. But there is no disagreement between us on the fundamental

---

[13] *See, e.g.*, *United States v. Mateen*, 806 F.3d 857, 861 (6th Cir. 2015) ("[W]hen a sentence enhancement based on a state conviction requires the state statute to mirror the federal one, the enhancement statute is explicit.").

[14] *See, e.g.*, *United States v. Sinerius*, 504 F.3d 737, 743 (9th Cir. 2007) (observing that "§ 2252A(b) treats federal offenses located in chapter 109A … as a separate category of predicate offenses, independent from its treatment of state law convictions"); *United States v. Hubbard*, 480 F.3d 341, 348 (5th Cir. 2007) (reaching a similar conclusion).

point that the "relating to" language of § 2252(b)(2) does not require exact congruence with the provisions of Chapter 109A.

Mr. Kraemer nevertheless submits that the Supreme Court's decision in *Mellouli v. Lynch*, 135 S. Ct. 1980 (2015), has limited, as a general matter, the reach of the words "relating to" in § 2252(b)(2). We cannot accept this argument. As the Tenth Circuit has observed, *Mellouli* turned "not on the definition of 'relating to,' but on the particular removal statute's surrounding text and history." *Bennett*, 823 F.3d at 1322. *Mellouli* addressed whether a resident alien's prior conviction for a state drug paraphernalia misdemeanor was within the scope of a federal removal provision. 135 S. Ct. at 1984. The Immigration and Nationality Act authorizes the removal of an alien "convicted of a violation of … any law or regulation of a State, the United States, or a foreign country *relating to* a controlled substance (as defined in section 802 of title 21)." 8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added). State authorities had charged Mellouli with concealing pills in a sock but did not identify the substance or allege it was one defined on the federal schedules. *Mellouli*, 135 S. Ct. at 1985. The Supreme Court held that the removal provision was satisfied only "when the elements that make up the state crime of conviction relate to a federally controlled substance." *Id.* at 1990. The Court rejected the Government's position that would have authorized deportation "any time the state statute of conviction bears some general relation to federally controlled drugs." *Id.* Recognizing that the words "relating to" are "broad" and "indeterminate," the Court nevertheless cautioned that "those words, 'extend[ed] to the furthest stretch of [their] indeterminacy, … stop nowhere.'" *Id.* (alterations in original) (quoting *New York State Conference of*

*Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). It pointedly noted that, in certain situations, context may "tug in favor of a narrower reading." *Id.* (alterations omitted) (quoting *Yates v. United States*, 135 S. Ct. 1074, 1083 (2015)). Given the text and history of the removal provision, the Court held that, to trigger removal under § 1227(a)(2)(B)(i), the Government had to "connect an element" of the prior conviction to a controlled substance as defined in 21 U.S.C. § 802. *Id.* at 1991. Because, under the categorical approach, Mellouli's state conviction for possession of drug paraphernalia did not relate to a controlled substance (as defined in section 802 of title 21), his conviction did not render him deportable. *Id.* at 1988.

Here, by contrast, neither the text nor the history of the penalty enhancement in § 2252(b)(2) cabins our reading of the words "relating to." Unlike the removal provision in *Mellouli*, § 2252(b)(2) contains no limiting parenthetical. *Compare* 8 U.S.C. § 1227(a)(2)(B)(i) (triggering removal based on prior conviction "relating to a controlled substance (as defined in section 802 of title 21)"), *with* 18 U.S.C. § 2252(b)(2) (applying mandatory minimum based on prior conviction "relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward"). Indeed, the terms "sexual abuse" and "abusive sexual conduct" are not qualified by reference to any federal definition. The Court in *Mellouli* specifically noted that, absent the limiting phrase "as defined in section 802," the removal provision would apply to offenses beyond those involving drugs listed in § 802. 135 S. Ct. at 1988 n.9. Because § 2252(b)(2) lacks similar limiting language, "relating to" retains its usual broad meaning here.

In addition, "the structure of the removal statute emphasizes the need for complete overlap between state and federal predicate offenses in a way" that § 2252(b)(2) does not. *Bennett*, 823 F.3d at 1323. The removal provision groups state and federal convictions under one umbrella. *See* 8 U.S.C. § 1227(a)(2)(B)(i) (authorizing removal of an alien who has a qualifying prior conviction under "any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21)"). Because federal law only covers federally defined controlled substances, the meaning of "relating to" is necessarily limited. By contrast, the mandatory minimum for child pornography before us today lists state and federal predicate offenses separately. *See* 18 U.S.C. § 2252(b)(2) (applying mandatory minimum to a person who "has a prior conviction under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10," "*or* under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward" (emphasis added)). Thus, the structure of § 2252(b)(2) does not compel a narrow reading of "relating to," and we must apply the general rule that this term ought to be given a broad reading.

Finally, the very different historical backgrounds of the statutes confirm that "relating to" retains its broad meaning in § 2252(b)(2). In *Mellouli*, the Court explained that, when Congress enacted the removal statute, it "specifically listed covered offenses and covered substances." 135 S. Ct. at 1987. Congress amended the statute several times to include additional covered substances, then ultimately replaced the list with the cross-reference to 21 U.S.C. § 802. *Id.* Under these successive versions of the removal provision, the Board of

Immigration Appeals ("BIA") consistently inquired whether the alien's state conviction covered federally controlled substances. *Id.* Thus, the Court observed, "Congress and the BIA ha[d] long required a direct link between an alien's crime of conviction and a particular federally controlled drug." *Id.* at 1990.

Here, by contrast, there is nothing comparable in the historical background of § 2252(b)(2) to suggest Congress intended to limit applicability of the mandatory minimum to a state conviction with an absolute, "direct link" to a particular federal abuse offense. *See Mellouli*, 135 S. Ct. at 1990. Indeed, the opposite is true. Congress added state convictions relating to "aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward" as qualifying predicates for a two-year, mandatory minimum sentence in the Protection of Children from Sexual Predators Act of 1998.[15] At that time, Congress specifically took into consideration the high rate of recidivism among child sex offenders. *See* H.R. Rep. No. 105-557, at 12 (1998) (noting law enforcement testimony "about the nature of child sex offenders, how they seek out relationships with children and how the recidivism rates for such offenders are 10 times higher than other types of criminal offenders").

Congress later raised the mandatory minimum sentence from two years to ten years in the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003.[16] The Senate Committee on the Judiciary ex-

---

[15] Pub. L. No. 105-314, § 202(a)(2), 112 Stat. 2974, 2977 (1998).

[16] Pub. L. No. 108-21, § 103(b)(1)(D), 117 Stat. 650, 653 (2003).

plained that the amendment "enhance[d] penalties for re-peat offenders of child sex offenses by expanding the predi-cate crimes that trigger tough, mandatory minimum sen-tences." S. Rep. No. 108-2, at 19 (2003). Further, the House Conference Committee stressed that "[t]he increased manda-tory minimum sentences [were] responsive to real problems of excessive leniency in sentencing under existing law." H.R. Rep. No. 108-66, at 51 (2003) (Conf. Rep.). The House Con-ference Committee was particularly concerned that "courts have been disposed to grant downward departures from the guidelines for child pornography possession offenses under chapter 110, based on the misconception that these crimes are not serious." *Id.* Thus, nowhere in the legislative history did Congress indicate that it intended to limit the reach of § 2252(b)(2). Indeed, this history is consonant with broad applicability of a mandatory minimum to address high re-cidivism rates among child sex offenders and to underline the serious nature of crimes against children.

**B.**

Having explored the principles set forth in the earlier discussion, we now turn to the particulars of Mr. Kraemer's sentence. Mr. Kraemer's conviction for first-degree sexual assault of a child violated a Wisconsin statute that prohibit-ed "sexual contact or sexual intercourse with a person who has not attained the age of 13 years." Wis. Stat. § 948.02(1) (1995). The conduct prohibited by the Wisconsin provision certainly falls well within the heartland of "abusive sexual conduct involving a minor." 18 U.S.C. § 2252(b)(2). Moreo-

ver, the conduct punished by the Wisconsin statute is clearly within the prohibitions set forth in Chapter 109A.[17]

Mr. Kraemer submits that there is no match because Wisconsin criminalizes conduct involving victims under age thirteen, while 18 U.S.C. § 2244(a)(5), by reference to 18 U.S.C. § 2241(c), reaches victims only under age twelve. We cannot accept this view. Mr. Kraemer's Wisconsin conviction for first-degree sexual assault is one "relating to" abusive sexual conduct involving a minor despite a slight difference in the maximum age of the victim under state and federal law. Our conclusion is supported by other decisions finding inconsequential a state's failure to exactly match the victim-age requirements of the federal statutes. *See, e.g., United States v. Grimes*, 888 F.3d 1012, 1016–17 (8th Cir. 2018) (concluding New York statute criminalizing deviate sexual intercourse by a person age eighteen or over with a person under age fourteen related to "abusive sexual conduct involving a minor," despite lack of specific-intent requirement concerning victim's age); *Barker*, 723 F.3d at 324 (holding defendant's conviction under Vermont's statutory rape provision related to "abusive sexual conduct involving a minor," despite lack

---

[17] Notably, the conduct is clearly within the scope of the provisions contained in Chapter 109A. Section 2244(a) of Title 18 punishes one who "knowingly engages in or causes sexual contact with or by another person" if the action would violate "subsection (c) of section 2241 of this title had the sexual contact been a sexual act." 18 U.S.C. § 2244(a)(5). Section 2241(c), in turn, prohibits, among other conduct, "knowingly engag[ing] in a sexual act with another person who has not attained the age of 12 years." 18 U.S.C. § 2241(c). Thus, the state and federal statutes reach the same category of offense conduct.

of age differential or other "aggravating factor" identified in federal statutes).[18]

When Congress strengthened the penalties for child sex offenders, it was particularly concerned with the young age of their victims. *See, e.g.,* H.R. Rep. No. 105-557, at 12 (describing law enforcement testimony to the effect that "[n]early two-thirds of prisoners serving time for rape and sexual assault victimized children" and "[a]lmost one-third of these victims were less than 11-years-old"). At the same time, Congress recognized there would be diversity among the several states in defining their sexual misconduct laws. *See, e.g., Barker,* 723 F.3d at 324 (concluding "it ma[de] no difference that *federal law* would not consider as non-consensual the same sexual acts covered by [state] law" because "Congress recognized *variation* in the diverse state sexual misconduct laws" and "it left for states to define the relevant boundary between consensual and non-consensual sexual activity" (emphases in original)).[19] States, in turn, vary in their estimation of the proper age of consent. Thus, requiring an exact match between a state's definition of sexual abuse of a child and one of the federal offenses would thwart needlessly Congress's purpose of protecting young children from sexual predators by imposing heightened sentences for repeat offenders. *See, e.g.,* H.R. Rep. No. 105-557, at

---

[18] *See also Geasland,* 694 F. App'x at 440 (holding sentencing court did not plainly err in finding defendant's Wisconsin conviction for first-degree sexual assault of a child triggered mandatory minimum under § 2252(b)(2), even though state offense extended to twelve-year-old victims but federal offense did not).

[19] *See also id.* at 438 (similar).

12 (describing the Child Protection and Sexual Predator Punishment Act of 1998 as "a response to requests of victim parents and law enforcement to address public safety issues involving the most vulnerable members of our society, our children").[20]

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

---

[20] Because we hold that Mr. Kraemer's Wisconsin conviction for first-degree sexual assault of a child, standing alone, triggered the mandatory minimum under § 2252(b)(2), we do not reach the question whether his Wisconsin conviction for second-degree sexual assault of a child is also one "relating to … abusive sexual conduct involving a minor."