# United States Court of Appeals
## For the First Circuit

No. 23-1339

UNITED STATES,

Appellee,

v.

IRVIN ABREU,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Rikelman, Lynch, and Howard,
Circuit Judges.

Joshua L. Solomon, with whom Pollack Solomon Duffy LLP was on brief, for appellant.

Mark T. Quinlivan, Assistant United States Attorney, with whom Joshua S. Levy, Acting United States Attorney, was on brief, for appellee.

June 21, 2024

**RIKELMAN, Circuit Judge.** After Irvin Abreu pleaded guilty to one count of sexual exploitation of a child, the district court sentenced him to 315 months in prison. It concluded that Abreu was subject to an enhanced mandatory minimum sentence of 300 months (or twenty-five years) for his federal crime because he had a prior state-law conviction "relating to" sexual abuse or "abusive sexual contact involving a minor or ward." This appeal focuses on the district court's decision to apply that mandatory minimum. In Abreu's view, his prior state-law conviction for enticement of a child under the age of sixteen could not trigger the twenty-five-year minimum for his federal crime. We agree with the district court's ruling that the enhancement does apply and affirm Abreu's sentence.

## I. BACKGROUND

### A. The Offense[1]

In September 2019, Abreu (then thirty-four) began communicating with a twelve-year-old girl, Minor A, on the social media application Snapchat. Abreu steered their conversations toward sex, and the two began sending nude photos to one another. They later met in person on several occasions.

---

[1] Where an appeal follows a guilty plea, we glean the facts from "the plea agreement, the change-of-plea colloquy, the uncontested portions of the presentence investigation report ('PSR'), and the sentencing hearing transcript." United States v. Colcord, 90 F.4th 25, 28 (1st Cir. 2024) (citing United States v. Spinks, 63 F.4th 95, 97 (1st Cir. 2023)).

The relationship was revealed when Minor A's mother was out of town, and Minor A was in the care of family friends. When the family friend drove to pick up Minor A from the library, where she was supposed to be studying, Minor A was nowhere to be found and did not arrive at the library until two hours after the planned pick-up time. The family friend alerted Minor A's mother, who returned early from her trip and proceeded to search Minor A's phone. She quickly found the conversations between Minor A and Abreu, including sexually explicit photos and videos of Minor A performing oral sex on Abreu. Minor A then confessed to the relationship, and Minor A's mother reported the abuse to the Lawrence Police. After reviewing the contents of Minor A's phone and briefly interviewing Minor A, the police arrested Abreu and obtained a warrant to search his phone. The search revealed thousands of photos, videos, and text messages between Abreu and Minor A, mostly of a sexual nature, including photos of Abreu and Minor A having sexual intercourse.

At the time of the crime in this case, Abreu was serving a suspended sentence for a conviction in Massachusetts state court. That conviction followed Abreu's arrest in February 2018, after he used Snapchat to send sexually explicit text messages and a photo of his genitals to a fifteen-year-old girl and then showed up at both her school and home. Based on that conduct, Abreu later pleaded guilty to one count of dissemination of harmful matter to

- 3 -

a child in violation of Massachusetts General Laws ch. 272, § 28, and one count of enticement of a child under the age of sixteen in violation of Massachusetts General Laws ch. 265, § 26C ("section 26C").

### B. Procedural History

On December 5, 2019, Abreu was indicted in this case for one count of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e). Importantly, § 2251(e) provides that a defendant with one prior conviction for certain federal or state crimes will face a mandatory minimum sentence of twenty-five years in prison. Abreu initially pleaded not guilty to sexual exploitation of a child. On November 5, 2021, the government moved for a pre-trial determination of whether Abreu's prior state-law conviction for enticement of a child under the age of sixteen was sufficient to trigger the twenty-five-year mandatory minimum in § 2251(e). Although recognizing it was unusual to resolve a sentencing dispute during pre-trial proceedings, the district court heard the argument and found that Abreu's prior conviction did trigger § 2251(e)'s twenty-five-year mandatory minimum. See United States v. Abreu, 578 F. Supp. 3d 202, 210-211 (D. Mass. 2022). Abreu subsequently changed his plea to guilty, without reaching a plea agreement with the government.

At sentencing, the district court determined that Abreu's total offense level was thirty-five and his criminal

- 4 -

history category was V, yielding a U.S. Sentencing Guidelines range ("GSR") of 262 to 327 months. However, after accounting for the twenty-five-year mandatory minimum sentence, the district court considered a GSR of 300 to 327 months. Ultimately, the district court sentenced Abreu to 315 months in prison. Abreu timely appealed, focusing on the district court's decision to apply the enhancement.

## II. DISCUSSION

Like the district court, we start by evaluating the critical language in § 2251(e). That provision states:

> Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction under this chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 25 years nor more than 50 years . . . .

18 U.S.C. § 2251(e) (emphases added).

Section 2251(e) provides for what is known as a sentencing enhancement, and the potential enhancement is triggered by certain previous offenses (also referred to as predicates or

- 5 -

predicate offenses). The parties agree that a method called "the categorical approach" applies when determining whether Abreu's prior conviction triggered the § 2251(e) sentencing enhancement. For the limited purpose of resolving this appeal, we accept the parties' position. We review de novo whether the district court correctly applied the categorical approach here and conclude that it did. See United States v. Mohamed, 920 F.3d 94, 99 (1st Cir. 2019).

Our previous decisions have laid out the details of the categorical approach, see, e.g., United States v. Starks, 861 F.3d 306, 315-17 (1st Cir. 2017), so we only briefly reiterate the basics of this method. Under the traditional categorical approach, we first examine the sentencing enhancement provision at issue (here § 2251(e)) and identify the crimes that would be sufficient to trigger the enhancement. United States v. Crocco, 15 F.4th 20, 21-22 (1st Cir. 2021) (citing Taylor v. United States, 495 U.S. 575, 600-02 (1990)). Next, we compare the "generic" versions of those crimes, meaning the crimes as "commonly understood," to Abreu's prior conviction. Descamps v. United States, 570 U.S. 254, 257 (2013). We conduct this comparison in a "categoric" manner, without looking at the specific facts of Abreu's prior offense, by comparing the elements of the generic crimes in § 2251(e) with the elements of the state child-enticement statute under which Abreu was convicted. See id. Abreu's prior offense

can trigger the enhancement if his statute of conviction (1) has the same elements as a generic crime discussed in § 2251(e), or (2) "defines the crime more narrowly" than the generic crime in § 2251(e).  Id. at 261.  Thus, Abreu's 2018 conviction for child enticement will trigger the enhancement "only if every possible violation of [the Massachusetts child-enticement statute] (putting aside truly outlandish hypotheticals) fits within" one of the generic crimes listed in § 2251(e).  Crocco, 15 F.4th at 22.  However, if the Massachusetts child-enticement statute "sweeps more broadly than the generic crime[s]" in § 2251(e), Abreu's prior conviction cannot serve as a basis for enhancement "even if [Abreu] actually committed the offense in its generic form."  Descamps, 570 U.S. at 261.

A "variant" of the above analysis -- the "modified categorical approach" -- applies when a defendant's prior offense is part of a "divisible" statute.  Id. at 257.  A divisible statute defines multiple potential crimes.  Mathis v. United States, 579 U.S. 500, 505 (2016).  It "sets out one or more elements of the offense in the alternative -- for example, stating that burglary involves entry into a building or an automobile."  United States v. Serrano-Mercado, 784 F.3d 838, 843 (1st Cir. 2015) (quoting Descamps, 570 U.S. at 257).  By "list[ing] elements in the alternative," divisible statutes "define multiple crimes," Mathis, 579 U.S. at 505, so burglarizing a building would be understood as

- 7 -

a different crime than burglarizing an automobile, Serrano-Mercado, 784 F.3d at 83. However, "[n]ot all crimes that can be committed in multiple different ways are divisible"; instead, some statutes list various ways or means of committing a single crime. Starks, 861 F.3d at 316. For instance, if a statute criminalized assault with a "deadly weapon" and specified that a "knife, gun, bat, or similar weapon" were all examples of a "deadly weapon," using these different weapons would create alternative means of accomplishing the same crime, not alternative crimes. Mathis, 579 U.S. at 506 (first citing Descamps, 570 U.S. at 271; and then citing Richardson v. United States, 526 U.S. 813, 817 (1999)).

Under the modified categorical approach, we add two additional steps to the traditional categorical analysis. First, we determine whether the statute of the predicate offense "contains discrete [crimes] that can be separated from each other" and is therefore divisible. United States v. Faust, 853 F.3d 39, 51 (1st Cir. 2017). Second, if the predicate offense statute is divisible, we determine "under which [of the discrete crimes] the defendant was convicted." Id. We then proceed with our usual categorical analysis, comparing the elements of that crime with § 2251(e)'s relevant generic crime. Mathis, 579 U.S. at 506.

We now apply this method to Abreu's case. At the outset, we examine § 2251(e) and identify which "generic crime[s]" would

trigger its twenty-five-year mandatory minimum enhancement. We then compare the elements of the Massachusetts child-enticement statute, Abreu's predicate offense, with the elements of § 2251(e)'s relevant "generic crime[s]." In doing so, however, we must evaluate, just as the district court did, if the child-enticement statute is divisible, as the government contends, or indivisible, as Abreu argues. All agree that the child-enticement statute, as a whole, sweeps more broadly than the generic crimes in § 2251(e); therefore, if it were indivisible, the mandatory minimum in § 2251(e) would not apply to Abreu.

We thus turn to the question of whether the Massachusetts child-enticement statute is divisible.

## A. Is Section 26C Divisible?

The district court concluded that the Massachusetts child enticement statute, section 26C, is divisible, and therefore it applied the modified categorical approach in evaluating whether Abreu's prior conviction triggered the twenty-five-year mandatory minimum for Abreu's federal crime. Abreu contends that the district court got it wrong. He argues that section 26C enumerates alternative means of accomplishing a single crime, and not alternative elements comprising different crimes, and is therefore indivisible. We agree with the district court.

We have recognized various methods of distinguishing divisible statutes that define multiple crimes from indivisible

statutes that simply describe multiple means of committing the same crime. "Most fundamentally, elements [of a crime] must be found unanimously by a jury, while means need not be." Starks, 861 F.3d at 316 (citing Mathis, 579 U.S. at 504). To determine a statute's elements, we rely on "authoritative sources of state law." Mathis, 579 U.S. at 518. The statute's text is of course one of those authoritative sources. For example, "a statute may itself identify which [elements] must be charged," or the "statutory alternatives [may] carry different punishments," indicating those alternatives are elements that make up different crimes. Starks, 861 F.3d at 316 (quoting Mathis, 579 U.S. at 518). We also consider state court decisions that address which facts a jury must find unanimously, especially decisions from the state's highest court. Id. (citing United States v. Tavares, 843 F.3d 1, 15 (1st Cir. 2016)); see Mathis, 579 U.S. at 517-18 (relying on an Iowa state supreme court decision to determine a statute's elements). State model jury instructions also can be a helpful tool in determining the elements of a crime. Starks, 861 F.3d at 316 (citing Faust, 853 F.3d at 57-58).

Abreu was convicted of enticement of a child under the age of sixteen pursuant to section 26C. Section 26C provides:

> (a) As used in this section, the term "entice"
> shall mean to lure, induce, persuade, tempt,
> incite, solicit, coax or invite.

- 10 -

(b) Any one who entices a child under the age of 16, or someone he believes to be a child under the age of 16, to enter, exit or remain within any vehicle, dwelling, building, or other outdoor space with the intent that he or another person will violate section 13B, 13B ½, 13B ¾, 13F, 13H, 22, 22A, 22B, 22C, 23, 23A, 23B, 24 or 24B of chapter 265, section 4A, 16, 28, 29, 29A, 29B, 29C, 35A, 53 or 53A of chapter 272, or any offense that has as an element the use or attempted use of force, shall be punished by imprisonment in the state prison for not more than 5 years, or in the house of correction for not more than 2 ½ years, or by both imprisonment and a fine of not more than $5,000.

Mass. Gen. Laws ch. 265, § 26C.

Each of the authoritative sources of state law demonstrates that the offenses listed in section 26C(b) are separate elements, rather than means, and thus the child enticement statute encompasses multiple crimes. Starting with the statute's text, section 26C criminalizes the enticement of a child under the age of sixteen, or someone the defendant believes to be a child under the age of sixteen, with the intent to "violate" one of the listed statutes. Id. The substance of the intent element that the Commonwealth must prove under section 26C therefore depends on which underlying offense it contends the defendant intended to commit -- for example, did the defendant intend to commit indecent exposure (Mass. Gen. Laws ch. 272, § 53), statutory rape (Mass. Gen. Laws ch. 265, § 23), or disseminating matter harmful to a minor (Mass. Gen. Laws ch. 272, § 28)?

- 11 -

This reading of the child-enticement statute also is required by two companion cases from the Massachusetts Supreme Judicial Court ("SJC"): Commonwealth v. Disler, 884 N.E.2d 500 (Mass. 2008), and Commonwealth v. Filopoulos, 884 N.E.2d 514 (Mass. 2008). Interpreting section 26C, the SJC explained that the intent element for child enticement varies, depending on which underlying enumerated statute the defendant set out to violate. See Disler, 884 N.E.2d at 510. As an example, the SJC held that when a defendant is charged under section 26C and "the Commonwealth seeks to prove that the intended offense was statutory rape, the Commonwealth will be required to prove that the defendant enticed a child . . . with the intent to have sexual relations with a person under sixteen years of age." Id. Similarly, in Filopoulos, the SJC held that even when the underlying offense for a section 26C prosecution would violate a strict liability statute -- such as indecent assault and battery on a person under the age of fourteen (Mass. Gen. Laws ch. 265, § 13B) or rape and abuse of a child (Mass. Gen. Laws ch. 265, § 23) -- "the Commonwealth is required to prove beyond a reasonable doubt, as an element of the crime of child enticement, that the defendant intended that his advances be directed to an underage person." 884 N.E.2d at 518.

The Massachusetts model jury instruction for child enticement also weighs in favor of finding the statute divisible. The jury instruction breaks the crime into three elements: (1) the

victim was under the age of sixteen, or the defendant believed the victim to be under the age of sixteen; (2) the defendant enticed the victim to enter, exit, or remain within a vehicle, dwelling, building, or outdoor space; and (3) the defendant did so with the intent of violating one of the statutes listed in section 26C. See Massachusetts Criminal Model Jury Instructions for Use in the District Court, Instruction 6.560, at 1 (May 2011). For the intent element, the jury instruction requires that the Commonwealth prove beyond a reasonable doubt that "the defendant intended to commit the offense of," and then leaves a blank where the trial judge must indicate which of the underlying listed offenses is at issue. Id. at 4. The jury instruction then specifies that the trial judge should "instruct [the jury] on the elements of the offense which the defendant is alleged to have intended" and includes a list of the enumerated offenses and the location of their respective model jury instructions. Id. Therefore, the trial judge is required to craft a child-enticement instruction based on the elements of the underlying listed offense the defendant allegedly intended to commit.

Abreu, however, urges a different reading of Massachusetts law. In Abreu's view, although section 26C requires that the government prove the element of intent beyond a reasonable doubt, the enumerated statutes are merely alternative factual

means through which intent can be established rather than elements in their own right.

Abreu contends that, per Filopoulos, the jury must find that the defendant intended to commit "one or more" of the enumerated offenses in section 26C, which he believes suggests that the enumerated offenses are alternative means of satisfying the intent requirement. 884 N.E.2d at 518. Abreu therefore argues that in a child-enticement prosecution, the jury is charged with "unanimously find[ing] the [third] element -- an intent to commit any of the enumerated offenses" and does not need to "unanimously agree on which enumerated offense" the defendant intended to commit.[2]

For support, Abreu looks to an unpublished Massachusetts Appeals Court case: Commonwealth v. Gould, No. 16-P-1253, 2018 WL 3421093 (Mass. App. Ct. July 16, 2018) (unpublished). In Gould, the defendant claimed that the trial judge erred by failing to give the jury a specific unanimity instruction regarding his child-enticement charge, which was predicated on multiple alternative theories of the underlying offense. Id. at *5. Without this instruction, the defendant argued, the "jurors may

_____

[2] We note that Abreu's interpretation of Filopoulos would make it much harder for defendants to mount a successful defense to a child-enticement charge, one of the reasons Disler highlighted for its contrary reading of the child-enticement statute. See Disler, 884 N.E.2d at 511.

- 14 -

have convicted [him] without agreeing on which of the enumerated offenses he intended to commit." Id. The Appeals Court rejected this argument, explaining that a unanimity instruction was unnecessary because "the enumerated crimes in the enticement statute 'are not separate theories. . . . [They] are simply different ways of proving that the defendant' possessed the requisite criminal intent." Id. (quoting Commonwealth v. Oquendo, 982 N.E.2d 538, 542 (Mass. App. Ct. 2013)). Abreu points to Gould as an explicit holding by a Massachusetts state court that unanimity on the underlying offense is not required, and, accordingly, that section 26C cannot be divisible.

We disagree. Gould is an unpublished case issued under a summary disposition rule, and thus the court did not intend for it to have precedential value. See, e.g., Chace v. Curran, 881 N.E.2d 792, 794 n.4 (Mass. App. Ct. 2008). For this reason, Gould is unlike the published Iowa state supreme court decision the U.S. Supreme Court relied on in Mathis. See Mathis, 579 U.S. at 517-18. Further, the government points us to other unpublished Massachusetts Appeals Court cases that demonstrate that juror unanimity is required when the Commonwealth presents two distinct theories of intent in enticement cases. See, e.g., Commonwealth v. Martins, No. 13-P-787, 2014 WL 3513209, at *3 (Mass. App. Ct. July 16, 2014) (unpublished) (assuming without deciding that a special verdict slip was required but finding no reversible error

because "the judge instructed the jury on the requirement of specific unanimity, and there is no allegation that the evidence was sufficient to convict on one theory but not the other"). Additionally, in its unanimity analysis, Gould does not discuss, nor cite to, the SJC's decisions in Filopoulos or Disler but rather relies on a sole case, Oquendo, 982 N.E.2d at 542, which does not interpret the child-enticement statute. See Gould, 2018 WL 3421093, at *5.

To be sure, the SJC decisions do not explicitly discuss unanimity. But they do address the child-enticement statute. And the SJC was clear that the enticement statute's intent element changes depending on which of the listed underlying offenses is charged by the government. The underlying offense therefore becomes "an element of the crime of child enticement." Filopoulos, 884 N.E.2d at 518. Published Appeals Court cases reflect this conclusion. In a section 26C case where the underlying offense was kidnapping, the jury was required to find "beyond a reasonable doubt[] that the defendant, at the time of the [child] enticement, possessed the specific intent to commit the crime of kidnapping." Commonwealth v. LaPlante, 897 N.E.2d 78, 80 (Mass. App. Ct. 2008). Thus, "[i]n the circumstances of th[at] case, the Commonwealth was required to prove beyond a reasonable doubt that the defendant intended (1) without lawful authority, (2) forcibly to confine the victim, (3) against her will." Id. at 82. This holding reflects

- 16 -

the SJC's previous explanation that juries must be unanimous when finding the elements of a crime. See Commonwealth v. Moses, 766 N.E.2d 827, 833 (Mass. 2002) ("Because [the factors at issue] are not elements of the offense, unanimity is not required.").

Taken together, the text of section 26C, Massachusetts case law, and the model jury instruction on child enticement are sufficient for us to conclude that the child-enticement statute is divisible. Thus, the district court was correct to apply the modified categorial approach.[3]

### B. Is Abreu's 2018 State-Law Conviction Related to the Generic Crimes Listed in § 2251(e)?

Having determined that section 26C is divisible, we turn to the next step of our review: comparing the elements of Abreu's state crime with the elements of the relevant generic crime that can trigger the mandatory minimum in § 2251(e).[4] See Mathis, 579

---

[3] Abreu also argues that the format of his state-law indictment supports his claim that section 26C is indivisible. However, the government notes that, per Mathis, courts may only examine "record documents," meaning documents showing the details of Abreu's prior offense, when state law "fails to provide [a] clear answer[]" on divisibility. 579 U.S. at 518. Given the government's position that the text of the statute, Massachusetts case law, and the model jury instruction demonstrate that section 26C is divisible, the government argues that there is no need for us to "peek" at the record documents for Abreu's child-enticement offense. We agree that Massachusetts law is determinative on the question of divisibility, and therefore we do not consult Abreu's indictment or consider his arguments about its scope.

[4] Ordinarily, after finding a statute divisible, we would next consider which of the listed offenses was the basis for Abreu's

U.S. at 506.  When Abreu pleaded guilty to enticement of a child in 2018, the Commonwealth offered two underlying offenses it believed he intended to commit: rape and abuse of a child, in violation of Massachusetts General Laws ch. 265, § 23, and indecent assault and battery on a person fourteen or older, in violation of Massachusetts General Laws ch. 265, § 13H.[5]  In evaluating if the mandatory minimum in § 2251(e) applied, the district court rightly conducted its comparison using the least serious of these two crimes -- enticement with the intent to commit indecent assault and battery on a child.  See Borden v. United States, 593 U.S. 420, 441 (2021) ("An offense does not qualify [as a trigger for an enhancement] unless the least serious conduct it covers falls within [the scope of the federal statute].").  Abreu does not dispute the district court's conclusion on this point.  Rather, Abreu contends that the district court inaccurately defined the relevant generic crimes encompassed by § 2251(e) and that his 2018

conviction.  See Faust, 853 F.3d at 51.  However, the parties do not dispute the underlying offenses at issue.  We thus proceed to the comparison between the elements of Abreu's state crime and § 2251(e)'s relevant generic crime.  See Mathis, 579 U.S. at 506.

[5] While analyzing Abreu's 2018 child enticement conviction, the parties and the district court inadvertently misidentified the offense as "indecent assault and battery on a child under fourteen," in violation of Mass. Gen. Laws ch. 265, § 13B.  The victim of the offense, however, was fifteen years old.  Thus, the accurate offense was "indecent assault and battery on a person fourteen or older," which is also an enumerated offense under section 26C.  The parties agree that the error on this point does not affect our analysis.

child-enticement conviction does not "relate to" these generic crimes. We address each of these arguments in turn.

"We begin, as always, with the text of the statute." United States v. Winczuk, 67 F.4th 11, 14 (1st Cir. 2023), cert. denied, 144 S. Ct. 577 (2024). Section 2251(e) requires a mandatory minimum sentence of twenty-five years if the defendant "has one prior conviction under . . . the laws of any State relating to aggravated sexual abuse, sexual abuse, [or] abusive sexual contact involving a minor or ward." 18 U.S.C. § 2251(e). The parties agree that the last two crimes in this list -- "sexual abuse" and "abusive sexual contact involving a minor" -- are the generic crimes that could encompass Abreu's 2018 child-enticement conviction. However, "[§] 2251(e) 'does not expressly define ["sexual abuse" or "abusive sexual contact involving a minor,"] so we interpret th[ose] phrase[s] using the normal tools of statutory interpretation.'" Winczuk, 67 F.4th at 16 (quoting Esquivel-Quintana v. Sessions, 581 U.S. 385, 391 (2017)). Under controlling precedent, we interpret a statute's words based on their plain and ordinary meaning at the time of the statute's enactment. Bostock v. Clayton Cnty., 590 U.S. 644, 654 (2020). The district court rightly followed this approach below. See Abreu, 578 F. Supp. 3d at 207-08.

Abreu maintains that, rather than relying on their plain and ordinary meaning, we should define the terms "sexual abuse"

- 19 -

and "abusive sexual contact involving a minor" in § 2251(e) by looking to a different set of federal statutes, 18 U.S.C. §§ 2241-48. These provisions are located in Chapter 109A of the United States Code, which governs "sexual abuse," as opposed to Chapter 110, which governs "sexual exploitation and other abuse of children" and includes § 2251(e). Abreu points out that §§ 2241-48 establish federal crimes with names like the state crimes discussed in § 2251(e). Notably, 18 U.S.C. § 2242 establishes the crime of "sexual abuse," 18 U.S.C. § 2243 establishes the crime of "sexual abuse of a minor, a ward, or an individual in federal custody," and 18 U.S.C. § 2244 establishes the crime of "abusive sexual contact."

In support of his position that we should define the terms in § 2251(e) by looking at these different federal statutes, Abreu relies heavily on Lockhart v. United States, 577 U.S. 347 (2016). To make matters even more complex, Lockhart interpreted yet another federal provision, 18 U.S.C. § 2252(b)(2). This particular provision provides penalties for certain activities relating to child pornography, but it includes sentencing enhancements like those in § 2251(e).[6] See Lockhart, 577 U.S. at

_____

[6] 18 U.S.C. § 2252(b)(2) provides:

> Whoever violates, or attempts or conspires to violate, paragraph (4) of subsection (a) shall be fined under this title or imprisoned not

- 20 -

349. Lockhart considered whether in the clause "under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward" that appears in § 2252(b)(2), the phrase "involving a minor or ward" modifies all the crimes listed in the clause or only "abusive sexual conduct." Id. In holding that "involving a minor or ward" only modifies "abusive sexual conduct," the Supreme Court found support in the titles of the Chapter 109A offenses. Id. at 353-54 ("We cannot state with certainty that Congress used Chapter 109A as a template for the list of state predicates set out in § 2252(b)(2), but we cannot ignore the parallel, particularly because [Chapter 109A's]

---

more than 10 years, or both, but if any visual depiction involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age, such person shall be fined under this title and imprisoned for not more than 20 years, or if such person has a prior conviction under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of Title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

18 U.S.C. § 2252(b)(2) (emphases added).

- 21 -

headings . . . were in place when Congress amended the statute to add § 2252(b)(2)'s state sexual-abuse predicates.").

Abreu contends that the Supreme Court's focus in Lockhart on the parallels in structure and terminology between the state predicates listed in § 2252(b)(2) and the Chapter 109A federal crimes indicates that the state predicates listed in § 2251(e) should be understood in light of the definitions in Chapter 109A. He further claims that, in the wake of Lockhart, a decision by one of our sister circuits supports his argument. See United States v. Hebert, 888 F.3d 470, 475 (10th Cir. 2018) ("The Supreme Court has stated that 'relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward' in § 2252(b)(2) seemingly mirrors the offenses listed in 18 U.S.C. ch. 109A. Therefore, we look to Chapter 109A for the definition of generic sexual abuse." (citation omitted) (quoting Lockhart, 577 U.S. at 353-54)).[7] Abreu points to the very similar language in §§ 2252(b)(2) and 2251(e) as a reason to apply the definitions in Chapter 109A to our interpretation of the state predicates in § 2251(e). He also maintains that any decision to the contrary

---

[7] We do not weigh in on Abreu's reading of Hebert and whether the Tenth Circuit would apply the same approach to the state crimes included in § 2251(e) as it does to the state crimes included in § 2252(b)(2).

would run afoul of the rule of lenity,[8] because <u>Lockhart</u> relied on Chapter 109A when doing so broadened the enhancement's predicates, and thus we should rely on Chapter 109A when doing so would narrow the set of predicates.  We disagree.

As an initial matter, <u>Lockhart</u> does not stand for the proposition that the state crimes listed in § 2252(b)(2) must be <u>defined</u> in reference to Chapter 109A.  Indeed, the Supreme Court went out of its way to state the opposite: It "d[id] not decide" "[w]hether the terms in § 2252(b)(2) are given their 'generic' meaning <u>or</u> are defined in light of their federal counterparts." <u>Lockhart</u>, 577 U.S. at 360-61 (emphasis added) (citations omitted).  Given this explicit holding, the Supreme Court in <u>Lockhart</u> could not have been addressing the issue posed in this case: whether the list of state-law predicates in § 2251(e) must be defined in reference to the federal crimes in Chapter 109A.  <u>Id.</u>  Thus, Abreu is simply wrong in his reading of <u>Lockhart</u>.

Further, the text of § 2251(e) does not support Abreu's position.  Section 2251(e)'s twenty-five-year mandatory minimum sentence applies to a defendant who "has one prior conviction under this chapter, . . . <u>chapter 109A</u>, . . . <u>or</u> under the laws of any

---

[8]  The rule of lenity is a principle of statutory interpretation that requires courts to construe narrowly the meaning of an ambiguous criminal statute in favor of the defendant. <u>See</u> <u>United States</u> v. <u>Dion</u>, 37 F.4th 31, 39 (1st Cir. 2022).  As described below, we conclude that the terms of § 2251(e) at issue here are not ambiguous.

State relating to aggravated sexual abuse, sexual abuse, [or] abusive sexual contact involving a minor or ward." 18 U.S.C. § 2251(e) (emphases added). Congress was explicit that a prior conviction under Chapter 109A will trigger a sentencing enhancement; if Congress also intended the state predicate crimes to be limited to crimes equivalent to those defined by Chapter 109A, it easily could have said so. For example, 18 U.S.C. § 2426(b), yet another federal provision, defines "prior sex offense conviction" as a conviction under certain federal statutes or "under State law for an offense consisting of conduct that would have been an offense under [federal law] if the conduct had occurred within the . . . territorial jurisdiction of the United States." Id. (emphasis added). Yet Congress chose not to use this approach in § 2251(e). Cf. Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972))). Instead, it made clear that convictions under Chapter 109A or under similar state laws can be predicate offenses that can justify the twenty-five-year mandatory minimum.

Moreover, our case law supports a broad reading of § 2251(e).  In United States v. Winczuk, we rejected an argument attempting to limit the scope of the generic crimes listed in § 2251(e), looking specifically at the clause applicable to defendants with two prior qualifying offenses.  See 67 F.4th at 14, 18.  After carefully reviewing § 2251's legislative history, we explained that by "repeatedly amend[ing] § 2251 both to expand its substantive reach and to add additional predicates for the recidivist enhancements[,] Congress has broadened the statute, not narrowed it."  Id. at 18.  We therefore "join[ed] four other circuits in adopting a broad reading of" the disputed clause.  Id. Here, defining the § 2251(e) state predicate crimes with reference to Chapter 109A would have the effect of narrowing the reach of the sentencing enhancement.  Such a limitation would be inconsistent with Congress's efforts to broaden the reach of this statute.  See id.

Next, several of our sister circuits have rejected Abreu's preferred interpretation of § 2251(e).  These circuits have interpreted the scope of the generic crimes listed at the end of § 2251(e) and other similarly worded sentencing enhancements based on the plain and ordinary meaning of the words used.[9]  And

---

[9] See United States v. Barker, 723 F.3d 315, 322-23 (2d Cir. 2013); United States v. Northington, 77 F.4th 331, 336 (5th Cir. 2023); United States v. Kraemer, 933 F.3d 675, 680 (7th Cir. 2019);

four of these circuits have reaffirmed their position in the years since Lockhart was decided. See, e.g., United States v. Kraemer, 933 F.3d 675, 681 (7th Cir. 2019) ("We therefore cannot accept [the] argument that Congress must have intended to import into § 2252(b)(2) the specific provisions of Chapter 109A."); United States v. Krebs, 830 F.3d 800, 802 (8th Cir. 2016) ("In United States v. Sonnenberg, 556 F.3d 667, 670 (8th Cir. 2009), this court held that the definitions in Chapter 109A do not apply to the penalty enhancement provisions found in § 2252(b). . . . We see no warrant in Lockhart to reconsider Sonnenberg."). Thus, defining the state predicate crimes by their plain and ordinary language best accords with the decisions of our sister circuits.

Finally, Abreu's arguments on lenity are unpersuasive. We rely on lenity to "resolve ambiguity in favor of the defendant only 'at the end of the process of construing what Congress has expressed' when the ordinary canons of statutory construction have revealed no satisfactory construction." Lockhart, 577 U.S. at 361 (quoting Callanan v. United States, 364 U.S. 587, 596 (1961)). Here, our decision to interpret the state predicates listed in § 2251(e) by their plain meaning accords with the text of the

United States v. Krebs, 830 F.3d 800, 802 (8th Cir. 2016); United States v. Sinerius, 504 F.3d 737, 742-44 (9th Cir. 2007); see also United States v. Gilbert, 425 F. App'x 212, 216 (4th Cir. 2011) (unpublished); United States v. Johnson, 681 F. App'x 735, 740 (11th Cir. 2017) (unpublished).

statute, the conclusions of our sister circuits, and our precedent. "We will not apply the rule of lenity to override a sensible . . . principle buttressed by the statute's text and structure."  Id. (citation omitted).

Our next task is to determine the plain meaning of the terms "sexual abuse" and "abusive sexual contact involving a minor or ward" at the time of § 2251(e)'s enactment.  Although we have not yet had reason to interpret these terms in § 2251(e), related precedent provides helpful guidance.

We begin with the term "sexual abuse."  We have previously considered the meaning of this term but, to date, have not adopted a particular definition.  See United States v. Londono-Quintero, 289 F.3d 147, 154 (1st Cir. 2002) ("Without settling on any particular definition, we nevertheless read the plain meaning of 'sexual abuse of a minor' in § 1101(a)(43)(A) to encompass easily the physical-contact provisions of [the state statute].").  In the criminal context, the term "sexual" is frequently defined by its commonly understood meaning, "[r]elating to, tending towards, or involving sexual intercourse, or other forms of intimate physical contact."  Sexual (adj.) 4.a, Oxford English Dictionary, https://perma.cc/5RX2-7GYN (last visited June 11, 2024); see also Sexual, Merriam-Webster's Collegiate Dictionary (10th ed. 1993) ("[H]aving or involving sex.").  The term "abuse" is commonly understood to mean "misuse[,] . . . to

use or treat so as to injure, hurt, or damage[, or] . . . to commit indecent assault on." United States v. Sullivan, 797 F.3d 623, 636 (9th Cir. 2015) (second and fourth alterations in original) (quoting United States v. Sinerius, 504 F.3d 737, 740 (9th Cir. 2007)); see also United States v. Padilla-Reyes, 247 F.3d 1158, 1163 (11th Cir. 2001) (adopting same definition); United States v. Mateen, 806 F.3d 857, 861 (6th Cir. 2015) (same). The U.S. Court of Appeals for the Ninth Circuit has further indicated that abuse includes behavior that is harmful emotionally. See Sullivan, 797 F.3d at 637.[10] Thus, taking these terms together, sexual abuse connotes (1) the use or mistreatment of an individual so as to injure, hurt, or damage them emotionally or physically, (2) relating to, tending towards, or involving sexual intercourse, or other forms of intimate physical contact.

We turn next to "abusive sexual contact involving a minor or ward." The term "minor" in § 2251 is defined as "any person

---

[10] In our view, either physical or psychological harm is sufficient to constitute "abuse." We read Sullivan, and the line of Ninth Circuit cases it relies on, as standing for this same proposition. See, e.g., United States v. Lopez-Solis, 447 F.3d 1201, 1207 (9th Cir. 2006) ("[W]e have defined abuse as 'misuse[,] . . . to use or treat so as to injure, hurt, or damage[, or] . . . to commit indecent assault on.' The Eleventh Circuit similarly has defined abuse in this context to mean 'physical or nonphysical misuse or maltreatment.' Both definitions encompass behavior that is harmful emotionally and physically." (footnotes omitted)). But even if that reading were to prove incorrect, we hold that physical harm, psychological harm, or some combination of the two can comprise "abuse."

under the age of eighteen years." 18 U.S.C. § 2256(1). The common meaning of the word "contact," at least within a phrase like "sexual contact," involves physically "coming together or touching." United States v. Northington, 77 F.4th 331, 337 (5th Cir. 2023) (citation omitted); see United States v. Johnson, 681 F. App'x 735, 740 (11th Cir. 2017) (unpublished) (defining "contact" as a "union or junction of body surfaces: a touching or meeting" (quoting Webster's Third New International Dictionary 490 (1986))); see also Contact (n.) 1.a, Oxford English Dictionary, https://perma.cc/B8VH-2NYU (last visited June 6, 2024) ("The state or condition of touching; the mutual relation of two bodies whose external surfaces touch each other."). Therefore, "abusive sexual contact involving a minor" connotes (1) physical contact, (2) of a sexual nature, (3) involving a child, (4) so as to injure, hurt, or damage them emotionally or physically. These definitions accord with the commonly understood meaning of the statutory terms and the decisions of our sister circuits.

However, § 2251(e) does not limit state predicate offenses to those amounting to "sexual abuse" or "abusive sexual contact with a minor"; it is sufficient for the prior offenses to "relate to" these generic crimes. The Supreme Court interprets "relating to" language broadly. See Lamar, Archer & Cofrin, LLP v. Appling, 584 U.S. 709, 717-18 (2018) ("[W]hen asked to interpret statutory language including the phrase 'relating to,' . . . [the

Supreme] Court has typically read the relevant text expansively."). Indeed, Congress employs the phrase "relating to" in order "to reach any subject that has 'a connection with, or reference to,' the topics the statute enumerates." Coventry Health Care of Mo., Inc. v. Nevils, 581 U.S. 87, 96 (2017) (citation omitted).

With these definitions in mind, we readily conclude that Abreu's conviction for enticement of a child under the age of sixteen with the intent of committing indecent assault and battery is categorically related to the generic crime of "abusive sexual contact with a minor or ward." Under Massachusetts law, indecent assault and battery is "an intentional, unprivileged and indecent touching of the victim," Commonwealth v. Marzilli, 927 N.E.2d 993, 996 (Mass. 2010) (citation omitted), abrogated on other grounds by Commonwealth v. LaBrie, 46 N.E.3d 519 (Mass. 2016), which "may consist of an unpermitted touching that society would regard as immodest and improper because of its sexual overtones, such as touching of the breasts or genitalia," Commonwealth v. Ortiz, 716 N.E.2d 659, 662 (Mass. App. Ct. 1999). Therefore, the elements of Abreu's predicate crime amount to enticing a child under the age of sixteen to enter, exit, or remain within a vehicle, dwelling, building, or outdoor space with the intent of indecently touching the child, meaning a touching that has sexual overtones. See Mass. Gen. Laws ch. 265, § 26C; Marzilli, 927 N.E.2d at 996. These

actions "ha[ve] a connection with," Coventry, 581 U.S. at 96 (internal quotation marks and citation omitted), abusive sexual contact involving a minor.

Abreu resists this conclusion for two reasons. First, he argues that the child-enticement statute "covers conduct that is far broader than the predicate crimes set forth in § 2251(e)," even when we only consider "a form of enticement involving intent to commit indecent assault and battery." Assuming this difference in scope between section 26C and the state predicate crimes in § 2251(e) exists, the term "relating to" bridges the gap. See Sinerius, 504 F.3d at 743 (explaining the phrase "relating to" "does not simply mandate a sentencing enhancement for individuals convicted of state offenses equivalent to sexual abuse," but rather "mandate[s] the enhancement for any state offense that stands in some relation, bears upon, or is associated with that generic offense"). Second, Abreu contends that "to commit indecent assault and battery in Massachusetts, one need not even act with a sexual intent" or engage in "sexual touching." Regardless of whether Abreu's prior offense requires a sexual intent or sexual touching, enticing a child for the purpose of indecent touching nevertheless "has a connection with" or "pertains to" a touching that causes emotional or physical harm "for the purpose of sexual . . . gratification." Mateen, 806 F.3d at 861. We may not "simply read[] the words 'relating to' out of the statute."

Morales v. Trans World Airlines, Inc., 504 U.S. 374, 385 (1992). Based on this broad language, Abreu's child-enticement conviction is related to the state generic crimes that serve as predicates for the § 2251(e) enhancement.

## C. Void for Vagueness

Finally, Abreu devotes one page of his brief to contending that if the state predicates listed in § 2251(e) are not defined in light of Chapter 109A, § 2251(e) is unconstitutionally vague under the Fifth Amendment's Due Process Clause. As an initial matter, the government claims that Abreu forfeited this argument by failing to raise it to the district court and now, on appeal, has waived it entirely by failing to address the plain error standard in his opening brief. See United States v. Rivera-Rodríguez, 75 F.4th 1, 28 (1st Cir. 2023). However, after reviewing the briefs below, we conclude that Abreu did indeed raise this vagueness challenge to the district court and thus had no reason to address the plain error standard on appeal. We therefore review Abreu's vagueness argument de novo. See United States v. Chin, 15 F.4th 536, 547 (1st Cir. 2021).

The Supreme Court has held that the government violates the Due Process Clause of the Fifth Amendment "by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary

enforcement." Johnson v. United States, 576 U.S. 591, 595 (2015). These principles apply both to statutes defining the elements of a crime and statutes mandating sentences. Id. at 596. Abreu argues that if "sexual abuse" and "abusive sexual contact involving a minor" are not anchored to the definitions in Chapter 109A, and "relating to" is given an expansive meaning, the result is an interpretation of § 2251(e) that is "irretrievably vague." Our precedent requires that we evaluate Abreu's vagueness challenge as applied to the facts of his specific case. See United States v. Zhen Zhou Wu, 711 F.3d 1, 15 (1st Cir. 2013) ("Outside the First Amendment context, we consider 'whether a statute is vague as applied to the particular facts at issue,' for a defendant 'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" (quoting Holder v. Humanitarian L. Project, 56 U.S. 1, 19-20 (2010))).

Abreu contends that § 2251(e) is vague as applied to his circumstances because of the way his predicate offense, child enticement, interacts with § 2251(e)'s "relating to" language. In support, Abreu points to the fact that enticement with intent to commit indecent assault and battery potentially criminalizes kissing, but only if it violates "contemporary views of personal integrity and privacy." Commonwealth v. Miozza, 854 N.E.2d 1258, 1262-63 (Mass. App. Ct. 2006) (citation omitted). Abreu argues

that, under this standard, a defendant's prior crime could qualify for the § 2251(e) enhancement if it is related to enticement with the intent to kiss contrary to "contemporary views of personal integrity and privacy," id., a result that he maintains "fails to give ordinary people fair notice of the conduct [§ 2251(e)] punishes," and consequently "invites arbitrary enforcement," Johnson, 576 U.S. at 595.

Given Abreu's 2018 conduct, we see no such concerns in applying § 2251(e) in this case. When Abreu pleaded guilty in 2018 to enticement of a child with the intent to commit indecent assault and battery on a person fourteen or older, he admitted to sending sexually explicit messages and photos of his genitalia to a fifteen-year-old girl and attempting to pick her up from school. It would be clear to the ordinary individual that this behavior qualifies as conduct related to "sexual abuse" or "abusive sexual contact involving a minor." Nor are we concerned that Abreu's conduct invited arbitrary enforcement of § 2251(e)'s mandatory minimum. The conduct he pleaded guilty to clearly falls within the range of behavior that serves as the basis of predicate offenses under § 2251(e).

Further, Abreu's kissing example is unpersuasive. Massachusetts case law has further interpreted what "contemporary views of personal integrity and privacy" mean in the child enticement context. See, e.g., Commonwealth v. Cruz, 99 N.E.3d

827, 830-31 (Mass. App. Ct. 2018). When we look at these definitions, it is reasonably clear that intentionally touching a child under sixteen in a manner "that is 'fundamentally offensive to contemporary moral values,' and that 'society would regard as immodest and improper because of its sexual overtones,'" id. (citations omitted), is "related to" "sexual abuse" or "abusive sexual contact involving a minor." As applied to Abreu's conduct, § 2251(e) neither "fails to give ordinary people fair notice of the conduct it punishes" nor "invites arbitrary enforcement." Johnson, 576 U.S. at 595.

Finally, Abreu also appears to advance a facial vagueness challenge. To the extent it would be appropriate for us to consider a facial vagueness argument under our precedent, Abreu provides no reasoned basis in his conclusory briefing for us to hold that terms like "sexual abuse" or "abusive sexual contact involving a minor" are inherently vague.

As a result, we see no vagueness concerns with the sentencing enhancement in this case.

### III. CONCLUSION

For all these reasons, we **AFFIRM** the district court.